## APPEAL OF EARL M. PALMER.

Docket No. 5447. Submitted October 17, 1925. Decided January 21, 1926.

> *Held*, that the entire profits arising from the business of Berthold Stern Flour Co. during the eleven-month period in 1918 and during the year 1919 were the income of the taxpayer, and the payment of $25,000 in settlement of a dispute and litigation was a capital expenditure.

*Arthur D. Cloud, Esq.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

### Before GRAUPNER and TRAMMELL.

This is an appeal from the determination of a deficiency in income tax for 1919 in the amount of $4,371.72.

### FINDINGS OF FACT.

The taxpayer is an individual who resided in Chicago, Ill. Prior to February 1, 1918, one Berthold Stern owned and operated a flour

selling agency, known as the Berthold Stern Flour Co. Stern had a contract with the Hubbard Milling Co., of Mankato, Minn., manufacturers of flour, which gave him the exclusive right to buy and sell that company's flour in Chicago. This right was subject to withdrawal at any time by the Hubbard Milling Co. upon 30 days' notice.

On February 1, 1918, the tangible assets of Berthold Stern Flour Co. consisted of:

| | |
|---|---:|
| Cash | $38, 366. 13 |
| Bonds | 1, 000. 00 |
| Flour on hand at cost | 38, 494. 39 |
| Equipment | 5, 500. 00 |
| Due from E. M. Palmer | 1, 087. 00 |
| Accounts receivable | 24, 462. 32 |
| Prepaid insurance | 196. 50 |
| | 109, 106. 34 |

There was a liability of $58,128.96 owing to the Hubbard Milling Co. for flour purchased. During January, 1918, Stern was called into the military service of the United States. Before entering the service he made an oral agreement with the taxpayer, who was a personal friend and who was also the son of the president and manager of the Hubbard Milling Co., by the terms of which Stern agreed to take all the accounts receivable and pay all debts, except the debt of the Milling Co. He was to leave in the business flour which cost $38,494.39, equipment of the value of $5,500, and cash in the amount of $14,188.57, or a total of $58,128.96, the amount of the debt due to the Milling Co. In addition, Stern transferred to the taxpayer a leasehold for the place of business, its good will, customers, and the organization of the going business.

The taxpayer paid no cash, but assumed the debt of $58,182.96 to the Hubbard Milling Co. and procured the substitution of himself as debtor. It was agreed that the taxpayer was to manage and continue the business under the name of Berthold Stern Flour Co., and that he was to take all profits of the business until Stern returned from his military service. If Stern failed to return, the taxpayer was to keep the entire business, but if and when Stern returned he was to have the right to purchase a half interest in the business upon the same basis as that on which the taxpayer secured the business.

On February 2, 1918, the taxpayer and Stern signed, in duplicate, the following memorandum of their agreement:

CHICAGO, 2/2, 1918.

In consideration of $5,500.00 and the total indebtedness to the Hubbard Milling Co. of the Berthold Stern Flour Co. receipt of which is hereby acknowledged, I hereby transfer to E. M. Palmer the Berthold Stern Flour Co.

business, including one Buick Car, one Ford car, one Old Reliable truck, Furniture and Fixtures, Stock and Good will located on premises at 452 No. Jefferson St., Chicago, Ill.

It is further agreed that the accounts receivable as they appeared on the books Feb. 1st belong to Berthold Stern. In consideration of the above E. M. Palmer agrees to sell to Berthold Stern one half interest in the Berthold Stern Flour Co., upon his return from the army, on the same basis as the above business was sold to him.

BERTHOLD STERN.
E. M. PALMER.

And I hereby assign lease on property at 452 No. Jefferson St., for which said E. M. Palmer assumes full liability.    ·

BERTHOLD STERN.
E. M. PALMER.

When Stern returned from military service in December, 1918, he immediately visited the taxpayer in Chicago, asked for the return to him of the half interest in the business, and offered to pay for the same according to his understanding of the agreement. The taxpayer declined to make a conveyance of the half interest and negotiations were continued for some time.

On March 24, 1919, Stern filed a suit for specific performance of the contract, and, on July 17, 1919, he filed an amended bill of complaint asking for a rescission of the contract and an accounting. Evidence was taken before a master in chancery, who submitted a report in which he recommended as follows:

That the transaction between Stern and the taxpayer, which culminated on February 2, 1918, was both a contract and a trust, under which Palmer was obligated faithfully to manage and continue the business during Stern's absence in the Army, and, upon his return, to restore one-half of the business to Stern; that, for faithfully carrying out this contract and trust, Palmer was to have the entire profits during Stern's absence and a one-half interest in the business after Stern's return, and that, in any event, Stern was entitled to one-half of the profits made by the business after his return from the Army and after his demand upon the taxpayer to restore his one-half interest.

The master further found from the evidence introduced before him that the taxpayer had taken unto himself, and intended to keep for himself alone, the right to sell the Hubbard flour, and that the taxpayer had made it impossible to return to Stern any part of the chief asset of the Berthold Stern Flour Co. business—namely, the good will which inhered in the Hubbard brand of flour and which was committed by Stern to the faithful keeping of the taxpayer during Stern's absence in the Army. The master further found that the taxpayer had broken his contract and violated his trust in a matter so substantial and essential that the entire object on Stern's

part for entering into the contract was destroyed. The master concluded and recommended that the oral contract between the taxpayer and Stern and the memorandum in writing be rescinded and canceled by a decree of the court, and that the decree restore, as nearly as was consistent with strict equity, the *status quo* of the parties; and he further recommended that the taxpayer be decreed to account to Stern for all receipts and expenditures of the business from January 31, 1918, to the day of the accounting, that the taxpayer be enjoined from doing any act or taking any part in the conduct of the business, that all profits from said business, from January 31, 1918, to the day of the accounting, be decreed to belong to Stern, and that the taxpayer be decreed to be entitled to not more than a salary of $150 per week and his traveling expenses.

The taxpayer, through his counsel, filed objections to the master's report, but, before the objections were heard, the taxpayer and Stern settled their differences by the payment of $25,000 by the taxpayer to Stern, and the suit was dismissed.

The profit from the business for the last 11 months of 1918 amounted to $19,871.47, and for 1919 to $28,772, a total of $48,643.46.

The taxpayer did not at any time convey a one-half interest in the business to Stern in accordance with the contract. The $25,000 paid by the taxpayer to Stern was a final settlement of all differences between them, and Stern thereafter claimed no further interest in the business or the profits therefrom.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

### OPINION.

TRAMMELL: There are two questions involved in this appeal. The first is, whether the profits arising from the business of Berthold Stern Flour Co., during the eleven-month period in 1918 and during 1919, should be included in the taxable income of the taxpayer for 1919; and the second question is, whether the taxpayer is entitled to a deduction on account of the $25,000 paid by him to Stern in settlement of the claim that Stern had against him. The Commissioner held that taxpayer should include in his 1919 income the profits for 1918 and 1919 and might deduct the payment of $25,000.

The contract and arrangement between the taxpayer and Stern, made at the time Stern entered the Army, was verbal. Stern, however, did convey his business to the taxpayer in 1918. There being

only personal property involved, the sale could be effectual and binding without a written instrument. The contact entered into, whereby the taxpayer agreed to convey a one-half interest in the property and business back to Stern, is evidence of the fact that the taxpayer did actually acquire the business. He having acquired it, it belonged to him until he disposed of it. It may be true that the court would have canceled the contract and restored the parties to the status they were in before the execution of any agreement relating to the business, but no such order or decree was ever entered. The contract undoubtedly was not void but was binding until it had been revoked or canceled. The recommendation of the master appointed to take the testimony does not have the effect of a decree of the court, and did not cancel or abrogate either the original conveyance to the taxpayer or the contract to reconvey. The fact is that the taxpayer acquired the business in 1918 and remained the owner thereof. Any profits arising therefrom belonged to him. The profits which arose from the business, while it belonged to the taxpayer in 1918, are taxable to him in that year, and those profits which arose in 1919 are taxable in that year.

The question then arises as to whether the amount of $25,000, paid by the taxpayer in 1919 to Stern, constitutes an ordinary and necessary business expense or a capital expenditure. It was paid to Stern in settlement of litigation over the question as to whether the conveyance and contract made between the parties were effective. The effect of the payment was that the taxpayer acquired the undisputed ownership of the business and became entitled to all profits arising therefrom. The court, if it had followed the recommendation of the master, would have held that the taxpayer had no interest in the business, except the salary which he drew and certain traveling expenses. It would have put the parties back in the same situation they were in while Stern owned and operated the business himself, and the taxpayer would have been required to account for the profits. By making the payment of $25,000 he saved to himself the business and its profits.

In view of the foregoing facts, we are of the opinion that the said payment amounted to a capital expenditure and was not an ordinary and necessary expense.